versus DISH Network, etc. Again, an appeal from a decision of the Patent Trial and Appeal Board. And this is the case where there is a split argument, so I got it right now. Mr. Petty, you want five minutes for rebuttal? That's fine, thank you. May it please the Court, my name is Dave Petty and I represent the appellant, TQ Delta. Substantial evidence does not support the Board's findings that Claims 2 and 12 of the 268 patent are unpatentable over the prior art and the two IPRs that are at issue on this appeal. Claims 2 and 12 recite the step of maintaining synchronization with the second transceiver during the low power mode. With respect to the DISH IPR, there are three reasons to reverse the Board's finding. First, the Board incorrectly construed the phrase maintaining synchronization found in the claims. Second, substantial evidence does not support a finding that the art teaches that limitation. And third, the Board denied TQ Delta due process by adopting an unpatentability theory that was not asserted by DISH during the IPR. So the Board construed the phrase maintaining synchronization with a second transceiver during the low power mode to cover intermittent synchronization. So what's your best support in the spec for your position that that construction is wrong? Well, there is support in the spec that discusses how synchronization is maintained by a timing reference signal being continuously transmitted between the receivers and I believe that's in the spec at APPX 190 at column 7, 18 to 20 and column 9, 8 to 10. I guess what I'm trying to figure out is where does the word continue necessarily exclude continues through periodic synchronization? Well, again, I think the term is maintaining synchronization and that does not encompass intermittent or periodic synchronization. Intermittent synchronization means that there's no synchronization in between receipts of the signal, whereas the claim maintain synchronization requires synchronization to be kept in an existing state. Well, I don't mean to make your friend's argument for them, but the example that was given to the Board does have some intuitive appeal that you maintain a friendship, that doesn't mean you see someone every single day. You can maintain it over a period of time with periodic contact. What's your response to that? Yeah, but those periodic interactions are connected to each other. They're related to each other. So they may be periodic, but at least there's a relation to them. Intermittent synchronization, there's no connection between the receptions of the signal. Intermittent synchronization means there's no synchronization going on between and there's no relation between the instances of synchronization that may occur and therefore it's not maintained. It's not kept in an existing state. Well, you maintain your car, that doesn't mean you're constantly tinkering with it, right? Well, yeah, I think that's perhaps a different understanding of the word maintain in the context of this technology. You're maintaining synchronization between these transceivers such that when it comes out of low power mode, they'll be able to start activating and working right away. They've maintained information between each other and that has to be kept in an existing state. It can't be intermittent such that there is no connection between them. That's part of my problem. Where in your spec do you believe is the best support for the fact that maintain means being kept in an existing state continuously? Again, the spec discusses using a timing reference signal continuously to maintain a connection between two transceivers, but we also relied on a dictionary definition of maintain and expert testimony and all those things taken together are what support our construction of maintaining synchronization. What about the reference to the frame synchronization? The frame synchronization, that's consistent with our construction because the frames are sent at regular periods, for example, every 250 microseconds from one frame counter in one transceiver to a frame counter in a second transceiver such that they are synchronized with each other and that synchronization is maintained. It is not intermittent synchronization that's occurring with the frame transmissions. So we believe that's consistent with our understanding of what maintaining synchronization means. That it's keeping this existing state of synchronization during the low power mode and does not encompass bursts of data that might have individual unique synchronizations that are unrelated to each other. So we have to find that the claim construction is wrong before we can agree with you, right? Yes, to find that the R does not teach the limitation, correct. Okay. Synchronization is not limited to any particular type of synchronization, is it? It includes timing and frame synchronization? Correct, yes. And isn't there a certain intermittent character to at least frame synchronization? No, because again, it's sent at regular periods and each side knows what's going on on the other side. They count the frames. One side sends it and counts. The other side counts it and says, I received it. So they are maintaining synchronization because it's at regular periods continuously. Again, as opposed to intermittent bursts of data that may include synchronization bits that are unique to that data packet and unrelated to previous or subsequent receipts of other data packets that might have synchronization information. Okay, go on. So moving along. So under TQ Delta's construction, the teachings of the Morelli reference, which we're kind of referring to, upon which DISH relied to teach the limitations of claims 2 and 12, do not actually teach those limitations. Again, Morelli teaches using synchronization bits as part of data packets, and those data packets are sent intermittently or in bursts between transceivers. And the synchronization information in those data packets are unique to the data packets, such that when a data packet is received, the synchronization that occurs is unrelated to synchronization that may occur upon the receipt of other data packets. Therefore, in the Morelli system, synchronization is not maintained because there is no synchronization between receipts of different packets. And again, the packets could come at random times. Therefore, the state of synchronization in Morelli is intermittent, in fact, is the opposite of a maintained synchronization during the low-power mode. But again, the fact that there was some even admission by DISH that Morelli teaches only intermittent synchronization is only relevant if we find that maintaining synchronization doesn't cover that, right? Right, correct. If it doesn't cover intermittent synchronization, correct. Lastly, with respect to the DISH IPR, the board's finding was based on an unpatentability argument that was never made by DISH, and therefore violated TQ-Delta's due process. The board found that the Morelli, Bowie, and ANSI standards together teach maintaining synchronization via a periodic superframe synchronization, as purportedly disclosed by the combination of those references. But DISH and its petition never argued or provided any evidence that claims 2 and 12 are taught by periodic superframe synchronization. That phrase doesn't appear in their papers. The board's finding, therefore, is unsupported by any evidence or argument in the record, and therefore violated TQ-Delta's due process rights by coming up with this finding in its final written decision. Indeed, TQ-Delta didn't have notice of this unpatentability theory until the final written decision, and didn't have an opportunity to address it. That I'm having a hard time following, because DISH specifically relied on ADSL standard in combination with Bowie and Morelli, and I don't see how you could say you weren't on notice of that argument. But for the purposes of maintaining synchronization, they relied on the synchronizing bits of Morelli, and made no reference to superframe synchronization. That may be found in the other references. In fact, the only thing they relied on for the standard was to teach, I believe, the ability to send internet or video data with respect to claim 1. It never was relied on with respect to claim 2. So, at best, what they did in their paper was analogize the intermittent transmissions of the data packets in Morelli to the way superframes are transmitted in an ADSL system. But they did not say they were relying on ADSL superframes. Wait, so they referenced that argument in their papers, but they didn't say they were relying on it? They were analogizing Morelli to that. You know that argument was there. That's what you need for due process. You could have responded to that if you wanted to. Was there an oral argument on this? There was, yes. Did they argue that during the oral argument? I believe there was reference, yes. Did you get a respond? I believe so, yes. Did you ask for a server reply because you didn't have an adequate chance to respond to an oral argument? No. Why wasn't your chance at an oral argument to respond to an analogy they specifically made in their paper sufficient for due process? Well, again, we did respond to the analogy, but then the board swapped what they were relying on for the analogy. There was never any dispute that DISH was relying on the Morelli reference and the synchronizing bits to teach the limitation of maintaining synchronization. They never said that at the oral argument or in the reply. They were switching their basis for what teaches the limitation to this periodic superframe synchronization theory that appeared for the first time in the final written decision as the basis for finding the claims unpatentable. Let me go back quickly to the claim construction. The patent describes frame synchronization and in particular talks about data frames that are being transmitted followed by a synchronization frame. Correct. So the synchronization frame is not continuously sent. It's intermittently sent. Well, it's sent continuously, and it's sent at a periodic interval along with it. It's periodic, but it's not continuous. It's intermittent. Yes, it is transmitted, you could argue, intermittently, but the synchronization that it creates is maintained because it is related to the previous and subsequent transmissions of superframes. Okay. Okay, you're into your rebuttal. Oh, okay. Thank you. Thank you, Your Honor. May it please the Court. The first thing I'd like to address is the fact that we just heard that intermittent had to be related, and that's nowhere in the specification nor described anywhere in the intrinsic record whatsoever. Instead, the Board's claim construction was correct. The Board's claim construction said that maintaining synchronization did not exclude periodic or intermittent. And it did so because the specification, as Your Honors have already pointed out, specifically calls to synchronizing the frames by sending a sync signal at the end of a superframe. So you get 68 frames, and then the last frame, the 69th, is a superframe. Then it starts over again, and the next 69th is a separate superframe. So I don't understand the argument that they have to be related to each other because superframe number one has one sync signal. Superframe number two has another sync signal that's not related to the first. But doesn't the FACTS continuous reference to teaching how synchronization occurs through 69 imply that it's continuous? It would, again, no, Your Honor, because what it does is a superframe includes the 68 frames plus the 69th, which is the synchronizing frame. That's to make sure that 68 have gone by where you're not necessarily synchronized. And in the 69th, you say, hey, maybe we need to synchronize again. So it's not continuous for those 68. Just like any other intermittent type of signal where you send a signal and say, make sure that we're caught up to where we were before. That's exactly how the superframes operate. And to say now that maintaining has to be continuous and not intermittent would read out the preferred embodiment of the superframe structure, which only uses the 69th frame to cause the synchronization. And so the definition that the board gave was absolutely correct. And its application of our art to that definition is supported by substantial evidence. And in fact, as Your Honor has also pointed out, not refuted. If it's the correct construction, there is no rebuttal that there would be obviousness based on the exact combination of Morelli, Bowie, and the ANSI standards. Even if you were to find that the construction somehow excluded intermittent, there's nothing in Morelli that says that it's intermittent. And in fact, what we heard was, so long as the synchronization is maintained, it doesn't matter if the transmittal of that bit is intermittent. And that's exactly what our expert testified. They only quote the first sentence when they say that our expert agreed that the synchronization is intermittent. If you look to page Apex 4756, he's asked, is the signal in Morelli continuous or intermittent? He says it's intermittent. He then is asked, is it your understanding that synchronization is intermittent? He says, correct. But the very next question, he's asked, well, then how does that meet the claim? And the expert clarifies, you asked me if the data transmission was intermittent, not the synchronization. The synchronization is continuous during all periods of transmission. The fact that the transmission itself is intermittent is not relevant to that argument. So even if, Your Honor, changed the plane construction, the combination still meets it. What's your response to your friend's argument that you never really did rely on the ANSI standards? No, Your Honor, we absolutely did rely on the ANSI standards, and we did rely on that combination. In fact, one of the most important things, if you look in the appendix at page 454 in our reply brief below, we specifically said that we reiterated that we only rely on Morelli for its general teaching that transceivers can maintain synchronization while in low-power mode. That same page, and this is argued in the red brief at page 29, that same page of the appendix at 454 confirms that the combination could receive any data with sync information, like the ASDL frames, and this is in the red brief from pages 27 through 31. We absolutely indicated that the frames could be received, and the frames of Bowie, Bowie itself is an ADSL system, Bowie itself therefore has to match up to the ANSI standards. ANSI says when you're sending video, you use frames for synchronization, and we actually cite the fact that the combination could either attempt to bodily incorporate Morelli, or it could simply turn the transceiver on and allow Bowie to continue receiving the frames that it had previously received, and that's in the appendix at pages 232 and 233, which also cites to appendix 678, citing page 240 in the petition that says we want to make sure that we can continue receiving Bowie's frames. Unless your honors have any other questions, I'm not sure that I have anything else. Okay, thank you. Thank you, your honor. Mr. Foster, you get a little extra time if you need it. Good morning, Theo Foster for Appalachia Cisco Systems. Claim 2 recites two different transceivers. There's the transceiver recited in Claim 1, and then Claim 2 introduces a second transceiver. And looking at the figure in the blue brief on page 19, which was also in the case below at appendix 4941, the figure shows that two transceivers communicate with each other. This is rather obvious. You can't have a phone call with only one phone. You need two transceivers to communicate. One transmits, the other receives. It's a bidirectional communication link, and so the opposite direction is also possible. And as the figure shows, there can be a modem that has its receiver on and its transmitter off, and that corresponds to the situation of Claim 1 and Claim 11 in terms of what's on and what's off. The second transceiver is the other transceiver of the figure. Its receiver is off. Its transmitter is on. And this situation combined with Yamano's teaching is what renders obvious Claim 2. I just want to make sure. Let's go back to the basics. Now, your petition did not argue Yamano in combination with Bowie rendered them obvious, right? You relied on Yamano alone for your obviousness argument. So the petition referenced the teaching of Yamano with respect to the particulars of maintaining synchronization, the maintaining synchronization limitation of Claim 2. But Claim 2's reference to doing this while in the low-power mode, the low-power mode was taught by the combination of Bowie and Yamano, and that in the petition. Where do you recite in the petition the combination? So in the appendix at 4954, this is a page from the petition. It's the analysis of Claim 2 continuing from the previous page. And we say, as discussed above in Section 1.2.2, which was part of the analysis of Claim 1, Yamano teaches that the transmit and receive circuitry can operate independently, which results in lower power consumption when the modem is not transmitting data. And that, Section 1.2.2, begins on appendix page 4948, and it makes very clear that we relied on the combination of Bowie and Yamano for the teaching of the low-power mode that's claimed in Claim 1 and that Claim 1 is not at issue on this appeal. So I guess I'm confused. So you're saying that you relied on the combination for a different claim and that we're supposed to assume that the combination is still relevant to what's at issue here? The combination is still relevant here because Claim 2 refers to the low-power mode that was introduced in Claim 1, and to teach that low-power mode, we relied on the combination. Okay. If there are no other questions, I'll cede the rest of our time. Okay, thank you. Thank you. Just in response to the argument made with respect to the Cisco petition, it seems clear looking at the petition that the reliance is solely on Yamano. It repeats twice in that portion of the petition with respect to Claim 2, that it's the Yamano receiver being in a low-power mode that meets the aspect of the Claim 2 limitation that says maintaining synchronization during the low-power mode. Going back to a couple of things that were said during the discussion of the DISH IPR, the analogy you asked about maintaining a friendship is not really to maintaining synchronization. It's not really the correct analogy. The correct analogy would be more like it's analogous to meeting a first person and then later meeting a different person who has no relationship to the first person. I think that would be a more apt analogy to what's going on with the Morelli reference, and that's why I don't think the maintaining a relationship or a friendship analogy works as well. Let me go back to your first point because I really don't follow it completely. Claim 2 is dependent, right? It is, correct. So it incorporates Claim 1. It does. So to the extent that there was reliance on Bowie to say that Claim 1, that Bowie taught the limitations of Claim 1, why is that not relevant to the arguments that they're making with respect to Claim 2? Why wouldn't you incorporate their arguments as to Claim 1 into the Claim 2 analysis? Right. So the problem is they repeatedly refer to Yamano's teaching of the receiver being in a low-power mode as part of their argument. Right, but what a low-power mode is was argued in a different portion of their petition. But they seem to be arguing with respect to Claim 2 that the low-power mode language of Claim 2 is being met by the teaching of Yamano of the receiver being in a low-power mode where the pole is used, and that creates another issue. The whole point of the periodic pole in Yamano is that it's used to coordinate with a far-end transceiver when to wake up the receiver in the Yamano device that's in the low-power mode to a full-power mode to start receiving data. So in other words, you wouldn't use the periodic pole with a receiver that's already in a full-power mode. The whole point of the pole is to tell that receiver when to wake up and go into a full-power mode. But the point of Yamano was to teach the synchronization, right? Yes, in order to coordinate when the receiver should wake up out of the low-power mode. And the claim requires that the receiver be in a full-power mode or receiving data when the device is in the low-power mode. Okay. With that being said, that's all I have to say. Thank you. Okay, thank you. Thank you, Your Honors. Okay, the case will be submitted.